**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **CHRISTINE BOROVOY**, an individual, and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**SQUISHABLE.COM, INC.**, a New York corporation,<br><br>Defendant. | Case No: 1:23-cv-03660<br><br>Judge: Hon. Paul A. Crotty |

**PLAINTIFF'S UNOPPOSED MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT**

## TABLE OF CONTENTS

I.      INTRODUCTION..........................................................................................................1

II.     CASE SUMMARY.........................................................................................................2

    A.   The Data Incident........................................................................................................2

    B.   Plaintiff's Complaint....................................................................................................2

III.    SUMMARY OF SETTLEMENT ...............................................................................3

    A.   Settlement Benefits .....................................................................................................3

       1.   Monetary Relief .....................................................................................................4

       2.   Data Security Measures .........................................................................................5

       3.   Release ...................................................................................................................6

    B.   The Notice and Claim Process....................................................................................6

       1.   Notice.....................................................................................................................6

       2.   Claims ....................................................................................................................7

       3.   Requests for Exclusion and Objections .................................................................7

    C.   Fees, Costs, and Service Awards ...............................................................................8

IV.     LEGAL STANDARD ...................................................................................................9

V.      ARGUMENT...............................................................................................................10

    A.   The Settlement Class Should be Preliminarily Certified .........................................10

    B.   The Proposed Class is Sufficiently Numerous.........................................................12

    C.   Questions of Law and Fact Are Common to the Class.............................................12

    D.   Plaintiff's Claims and Defenses are Typical of the Class........................................13

    E.   Plaintiff Will Provide Fair and Adequate Representation of the Class. ...............13

    F.   Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior. .................................................................................................................14

G.   The Terms of the Settlement are Fair, Reasonable, and Adequate ........................ 16

1.   The Settlement Warrants Preliminary Approval Under Rule 23(e) .................. 17

2.   Consideration of the *Grinnell* Factors Favors Preliminary Approval .............. 22

H.   The Proposed Claims Administrator Will Provide Adequate Notice. .................. 24

VI.   **CONCLUSION** ...................................................................................................... **26**

# TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,

    464 F.3d 328 (2d Cir. 2006)...................................................................................................... 25

*Alcantara v. CNA Mgmt., Inc.,*

    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009)..................................................................................... 12

*Amchem Prods., Inc. v. Windsor*,

    521 U.S. 591 (1997)..................................................................................................... 11, 14, 15

*Baksh et al. v. IvyRehab Network, Inc.*

    No. 7:20-CV-01845 (S.D.N.Y.)................................................................................................ 20

*Beckman v. KeyBank, N.A.*,

    293 F.R.D. 467, 481- 83 (S.D.N.Y. 2013)................................................................................. 21

*Bolanos v. Norwegian Cruise Lines Ltd.,*

    212 F.R.D. 144, 156 (S.D.N.Y. 2022) ................................................................................ 13, 14

*Bourlas v. Davis Law Assocs.*,

    237 F.R.D. 345 (E.D.N.Y. Aug. 30, 2006) ............................................................................... 17

*Charron v. Pinnacle Group N.Y. LLC*,

    874 F. Supp. 2d 179 (S.D.N.Y. 2012)....................................................................................... 25

*City of Detroit v. Grinnell Corp.*,

    495 F.2d 448 (2d Cir. 1974).............................................................................................. 17, 22

*Cohen v. J.P. Morgan Chase & Co.,*

    262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009)................................................................. 9, 11, 14, 17

*Consol. Rail Corp. v. Town of Hyde Park*,

    47 F.3d 473 (2d Cir.1995) ........................................................................................... 12

*D'Amato v. Deutsche Bank*,

    236 F.3d 78 (2d Cir. 2007) .......................................................................................... 18

*Denney v. Deutsche Bank AG*,

    443 F.3d 253 (2d Cir. 2006) ........................................................................................ 11

*Fox v. Cheminova*,

    213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003) ................................................................. 14

*Frank v. Eastman Kodak Co.*,

    228 F.R.D. at 185 (W.D.N.Y. 2005) ..................................................................... 23, 24

*Freeland v. AT & T Corp.*,

    238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) ................................................................. 12

*Hammond v. The Bank of N.Y. Mellon Corp.*,

    No. 08 Civ. 6060 (RMB)(RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010) ...................... 20

*Hapka v. CareCentrix, Inc.,*

    Case No. 2:16-cv-02372, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................................... 15

*In re Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145 (2d Cir. 1987) ......................................... 14

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ................................................................ 15

*In re Austrian & German Bank Holocaust Litig.*,

    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ..................................................................... 19, 24

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,

    574 F.3d 29 (2d Cir. 2009) .......................................................................................... 13

*In re GSE Bonds Antitrust Litig.*,

    414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................................ 19

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

    293 F.R.D. 21 (D. Me. 2013).................................................................................................... 21

*In re Initial Pub. Offering Sec. Litig.,*

    260 F.R.D. 81 (S.D.N.Y. June 10, 2009).................................................................................. 17

*In re Interpublic Sec. Litig.*,

    No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................. 23

*In re Ira Haupt & Co.*,

    304 F. Supp. 917 (S.D.N.Y. 1969) .......................................................................................... 23

*In re Luxottica Group S.p.A. Sec. Litig.*,

    233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................................. 10

*In re Nissan Motor Corp. Antitrust Litig.*,

    552 F.2d 1088 (5th Cir. 1977) ................................................................................................ 25

*In re Painewebber Ltd. P'ships Litig.*,

    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................. 23

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,

    330 F.R.D. 11 (E.D. N.Y. Jan. 28, 2019)................................................................................. 16

*In re Polaroid ERISA Litig.*,

    2007 WL 2116398 (S.D.N.Y. July 19, 2007)........................................................................... 21

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,

    Case No. 1:14-md-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016)...................... 15

*Jackson v. Bloomberg, L.P.*,

   298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014)................................................................................ 12

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,

   333 F.R.D. 314 (S.D.N.Y. 2019) ............................................................................................. 22

*Jones v. Amalgamated Warbasse Houses, Inc.*

   97 F.R.D. 355 (S.D.N.Y.1982) ............................................................................................... 18

*Lizondro-Garcia v. Kefi LLC*,

   300 F.R.D. 169, 175 (S.D. N.Y. 2014) .................................................................................... 12

*Marisol A. v. Giuliani*,

   126 F.3d 372 (2d Cir.1997)....................................................................................... 11, 12, 13, 14

*Rutledge et al v. Saint Francis Healthcare System*,

   No. 1:20-cv-00013-SPC (E.D. Mo.) ....................................................................................... 20

*Strougo ex rel. BrazilianEquity Fund, Inc. v. Bassini*,

   258 F. Supp. 2d 254 (S.D.N.Y. 2003)..................................................................................... 21

*Velez v. Majik Cleaning Serv., Inc.,*

   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)............................................ 23

*Wal-Mart Stores, Inc. v. Dukes*,

   564 U.S. 338 (2011)................................................................................................................ 12

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*,

   396 F.3d 96  (2d Cir.2005)...................................................................................................... 25

*Willix v. Healthfirst, Inc.*,

   No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)................................................ 18

**Rules**

Federal Rule of Civil Procedure 23(a) ..................................................................................... 10, 12

Federal Rule of Civil Procedure 23(b) ......................................................................................... 10

Federal Rule of Civil Procedure 23(c) ......................................................................................... 24

Federal Rule of Civil Procedure 23(e) ....................................................................... 10, 16, 19, 24

**Treatises**

Manual for Complex Litigation, (3d ed. 1995).............................................................................. 17

Plaintiff Christine Borovoy ("Plaintiff") submits this Unopposed Memorandum in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.[1]

## I.    INTRODUCTION

Defendant Squishable.com, Inc. ("Defendant" or "Squishable") was the victim of a data incident that occurred from approximately May 26, 2022, to October 12, 2022, in which an unauthorized third party inserted unapproved code into Squishable's website which allowed the third party to view and potentially capture the personally identifiable information ("PII") of approximately 15,000 individuals. This class action arises out of Defendant's alleged failure to safeguard the PII that it collected and maintained from Plaintiff and Class Members. Defendant denies all liability and wrongdoing.

After extensive arms' length negotiations, the parties have reached a settlement that is fair, adequate, and reasonable. In exchange for a narrowly tailored release, limited to claims that were based upon the specific facts alleged in this case, Defendant has agreed to pay up to $500,000 to compensate valid claims submitted by Class Members, any court-approved attorneys' fees, costs and expenses, and court-approved Service Awards to the Plaintiff. Settlement Agreement, ¶¶ 2.2, 2.5. ("SA").[2] Plaintiff strongly believes the settlement is favorable to the Settlement Class. See Declaration of Kiley L. Grombacher, ("Grombacher Decl." or "Decl.") ¶ 11.

Pursuant to Rule 23(e), Plaintiff moves the Court for an order certifying the class for settlement purposes, preliminarily approving the settlement agreement, and approving the content and manner of the proposed notice. Accordingly, based on the following memorandum, the Grombacher

---

[1] Counsel for Defendant have been apprised of the content of this Motion and have stated that the Motion is unopposed.
[2] The Settlement Agreement ("SA") in its entirety is attached as Exhibit 1 to the Declaration of Kiley L. Grombacher ("Grombacher Decl.") filed herewith. Capitalized terms shall have the same meaning as assigned to them in the Settlement Agreement.

Declaration and its attached exhibits filed herewith, Plaintiff respectfully requests that the Court preliminarily approve the Parties' Settlement Agreement and issue the proposed order attached to the Declaration of Kiley L. Grombacher in Support of Plaintiff's Motion for Preliminary Approval, filed herewith as Exhibit 1.

## II.    CASE SUMMARY

### A.    The Data Incident

Defendant is a consumer goods retailer located in New York. In the ordinary course of doing business, Defendant collects certain PII from customers such as: name, address, payment card information, and email address. Grombacher Decl., ¶ 13. Defendant's Privacy Notice, posted on their website, provides that "Personal Information," including contact and payment information, will be protected by "commercially reasonable efforts."[3]

From approximately May 26, 2022, to October 12, 2022, Squishable was the victim of a data incident in which an unauthorized third party gained access to Squishable's network and computer systems and potentially accessed the PII of Plaintiff and the Class Members (hereinafter, the "Data Incident"). Grombacher Decl., ¶ 12. As a result, Squishable notified approximately 15,961 individuals that their PII was potentially impacted by the Data Incident. *Id*., ¶ 15.

### B.    Plaintiff's Complaint

On or about May 1, 2023, Plaintiff Christine Borovoy, through her counsel, filed a class action lawsuit based on the Data Incident against Squishable in this Court, which is the operative complaint in this litigation. Grombacher Decl., ¶ 17. Plaintiff alleges claims of negligence, unjust enrichment, breach of express contract, breach of implied contract, invasion of privacy, and violations of Illinois'

---

[3] https://www.squishable.com/PRPO.html.

Consumer Fraud and Deceptive Business Practices Act. *Id*. Plaintiff seeks equitable relief enjoining Defendant from engaging in the wrongful conduct complained of and compelling Defendant to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety. *Id*., ¶ 20. Further, by her complaint, Plaintiff seeks an award of actual, nominal, consequently and punitive damages as well as attorneys' fees and costs, and any such further relief as may be deemed just and proper. *Id*., ¶ 22.

Soon after Plaintiff filed her Class Action Complaint, the Parties, by and through their respective counsel, began discussing the possibility for early resolution. Grombacher Decl., ¶ 23. The Parties agreed that an early resolution was warranted. Over the next few months, the Parties engaged in extensive arm's length settlement negotiations. *Id.,* ¶ 26. Negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. *Id*., ¶ 27. On November 10, 2023, the parties engaged in a full-day mediation session with a qualified, neutral third-party mediator selected from the Court's Mediation Program by agreement of the parties, Christopher McDonald, Esq. The parties reached a settlement in principle at the mediation, and over the next few weeks, the Parties diligently negotiated, drafted, and finalized the settlement agreement, notice forms, and came to an agreement on a claims process and administrator. *Id*., ¶ 28. The Settlement Agreement ("SA") was finalized by the Parties on March 1, 2024, and is attached in full as Exhibit 1 to the Declaration of Kiley L. Grombacher, filed herewith. It is the opinion of Plaintiff and proposed settlement class counsel, based on their experience and investigation, that the Settlement Agreement presents a favorable result for the Class. *Id.*, ¶ 31.

## III.    SUMMARY OF SETTLEMENT

### A.        Settlement Benefits

Under the proposed Settlement, Class Members shall have an opportunity to submit a claim

for reimbursement of ordinary losses, lost-time, extraordinary losses, and a cash payment to California Subclass Members due to the California Consumer Privacy Act ("CCPA") claim available to them as California residents. Furthermore, under the Settlement Agreement, Defendant has implemented certain cybersecurity enhancements. The Settlement provides for relief for a Class defined as:

> "all natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information may have been compromised in the Data Incident."

SA, ¶ 1.7. The Class is estimated to include approximately 15,961 individuals.

The Settlement Class specifically excludes: (i) all Persons who timely and validly request exclusion from the Class; (ii) the Judge assigned to evaluate the fairness of this settlement; and (iii) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge. *Id*.

### 1. Monetary Relief

Under the terms of the Settlement Agreement, Squishable will pay at most $500,000, which will be used to make payments to Class Members and to pay the costs of Notice, Settlement Administration, attorneys' fees and expenses, and Service Award to Plaintiff. SA., ¶ ¶ 2.2, 2.5.

Settlement Class Members can submit a claim for Ordinary Losses, which provides for up to $200.00 per person reimbursement of documented ordinary losses, demonstrably incurred, more likely than not, as a result of the Data Incident, including, but not limited to:  (i) unreimbursed fees or other charges from Class Members' bank or credit card company incurred as a result of the Data Incident; (ii) unreimbursed fees relating to Class Members' account being frozen or unavailable incurred as a result of the Data Incident; (iii) unreimbursed fees or other charges relating to the

reissuance of Class Members' credit or debit card incurred as a result of the Data Incident; and (iv) other unreimbursed incidental telephone, internet, mileage, or postage expenses directly related to and incurred as a result of the Data Incident. SA, ¶ 2.1(a). Class Members can also submit a claim for documented Extraordinary Losses which will provide reimbursement of up to $2,500 per person for actual, documented, and unreimbursed monetary loss incurred on or after October 12, 2022, more likely than not caused by the Data Breach, and not already covered by one or more of the normal reimbursement categories. *Id*., ¶ 2.1(c).

Additionally, Class Members can submit a claim for compensation for up to four (4) hours of lost time spent addressing issues related to the Data Incident, calculated at the rate of $15.00 per hour. SA, ¶ 2.1(b). To make a claim for lost time the Class Member must include an attestation that the time claimed was actually spent as a result of the Data Incident. *Id*. Claims for lost time are subject to and included within the cap of $200 for ordinary losses. *Id*.

Lastly, California Subclass Members are defined as:

"All persons residing in the State of California whose PII was involved in the Data Incident."

SA, p. 1. California Subclass Members may submit a claim for a $100 cash payment due to the CCPA claim available to them as California residents. The CCPA Payment is in addition to the other payments provided by the Settlement.

### 2. Data Security Measures

In addition to the monetary relief provided, Squishable has represented that it has either undertaken or will undertake certain reasonable steps to further secure its systems and environments. SA, ¶ 2.3. Defendant has agreed to provide further information to the Plaintiff and Class Counsel, if requested, on a confidential and sealed basis regarding the already undertaken enhancements or planned future enhancements and the estimated value of those changes, provided that Plaintiff, with

prior approval from the Court, may file such information regarding the undertaken or planned enhancement steps under seal with the Court in accordance with the orders and instructions of the Court. *Id*.

### 3. Release

The release is tailored to the claims that have been plead or could have been plead in this case. SA, ¶ 1.25, 6.1. Class Members who do not exclude themselves from the Settlement Agreement will release all claims, whether known or unknown, against Released Persons, based on, relating to, concerning or arising out of the alleged Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the Litigation. *Id*. ¶ 1.25.

## B. The Notice and Claim Process

### 1. Notice

The Parties agreed to use KCC ("Settlement Administrator") as the Settlement Administrator SA, ¶ 1.30. The cost of notice and all other costs of Settlement Administration will be paid for out of the overall $500,000 cap. *Id*. ¶ 2.5. The notice plan provides for individual notice to Class Members via email or US mail, to the postal address that Squishable has on record for each Class Member. *Id*., ¶ 3.2(d).

The Settlement Administrator will establish a settlement website and will maintain and update the website during the claim period, with the Long Notice, and Claim Form, the Preliminary Approval Order, Settlement Agreement, and other relevant case documents. SA, ¶ 3.2(c). Class Members will be able to submit Claim Forms through the website. *Id*. The Settlement Administrator will also make a toll-free help line to provide Class Members with additional information about the Settlement and will establish a P.O. Box to which Class Members can submit claims. *Id*., 3.2(f)

### 2. Claims

The timing of the claims process is structured to ensure that all Class Members have adequate time to review the terms of the Settlement Agreement, compile documents supporting their claim, and decide whether they would like to opt-out or object. Grombacher Decl. ¶ 47. Class Members will have no less than ninety (90) days after the Short Notice is issued to complete and submit their Claim Form to the Settlement Administrator, either by mail or online. SA, ¶ 1.6. The Claim Form is written in plain language to facilitate Class Members' ease in completing it. *Id*. ¶ 1.5; SA, Ex. A. The Settlement Administrator will be responsible for reviewing the Claim Forms and determine if they are complete and valid. *Id*. ¶ 2.4. Should a claim be incomplete or lacking sufficient documentation, the Settlement Administrator may reach out the claimant for supplementation. *Id*. ¶ 2.4.1.

### 3. Requests for Exclusion and Objections

Settlement Class Members will have ninety (90) days following the Notice Commencement Date to object to or to submit a request for exclusion from the Settlement. SA, ¶ 1.19, 1.20. Similar to the timing of the claims process, the timing with regard to objections and requests for exclusion is structured to give Class Members sufficient time to access and review the Settlement documents—including Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards, which will be filed fourteen (14) days prior to the deadline for Class Members to object or exclude themselves from the Settlement. *Id*., ¶ 7.3.

To be excluded from the Settlement, Class Members must make their request in writing, and must clearly manifest their intent to be excluded from the class. SA, ¶ 4.1. Any Member of the Class who elects to be excluded shall not (i) be bound by any order or the Judgment; (ii) be entitled to relief under the Settlement Agreement; (iii) gain any rights by virtue of the Settlement Agreement; or (iv) be entitled to object to any aspect of the Settlement Agreement. *Id*., ¶ 4.2.

Any Settlement Class Member who wishes to object shall file notice of his/her intention to do so with the Court and concurrently mail notice to Class Counsel, counsel for Defendants, and the Claims Administrator. SA, ¶ 5.1. The objection to the Settlement Agreement must include: (i) the objector's full name and address; (ii) the case name and docket number; (iii) information identifying the objector as a Class Member, including proof that the objector is a member of the Class (e.g., copy of the objector's settlement notice, copy of original notice of the Data Incident, or a statement explaining why the objector believes he or she is a Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Approval Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (if any) representing him or her in connection with the objection. *Id*.

## C.    Fees, Costs, and Service Awards

The Settlement Agreement calls for a reasonable service award to Plaintiff in the amount of $1,500. SA, ¶¶ 1.28, 7.3. The Service Award is meant to compensate Plaintiff for her efforts on behalf of the Class, including maintaining contact with counsel, assisting in the investigation of the case, reviewing the Complaint, remaining available for consultation during the settlement negotiations, reviewing the Settlement Agreement, and answering counsel's questions. Grombacher Decl., ¶ 51.

After agreeing to the terms of the settlement, counsel for Plaintiff negotiated with Squishable regarding their attorneys' fees. Counsel and Squishable were unable to reach an agreed upon amount for the attorneys' fees payment. Rather than allow such a disagreement to delay the payments to the class members by continuing such negotiations, Squishable agreed to pay the fee amount awarded by

the Court, but it reserved the right to object to any fee request that exceeds $80,000. SA, ¶ 7.2. Plaintiff contends that $80,000 represents just 16% of the value of the settlement, far below what is typically awarded in data breach cases, while Defendant contends an award of up to $80,000 would be reasonable under the circumstances presented here. *See Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993, at *3 (S.D.N.Y. Oct. 23, 2023) (holding that "[e]mpirical evidence indicates that the median percentage of the settlement amount awarded as attorneys' fees in" matters similar to data breach cases is 29%). As such, Class Counsel intend to seek attorneys' fees and costs that are closer to those typically awarded in these cases of between 25% and 30% of the value of the settlement, that is to say between $125,000 and $150,000. SA ¶ 7.2. Any costs and fees awarded are to be paid out of the $500,000 cap as outlined in the Settlement Agreement. *Id*. ¶ 7.4.

Class Counsel will submit a separate motion seeking attorneys' fees, costs, expenses, and Plaintiff's Service Award before filing the Motion for Final Approval, and before Class Members' deadline to exclude themselves from, or object to, the Settlement Agreement. SA, ¶¶ 7.2, 7.3. Defendant continues to reserve its right to oppose this motion.

## IV.   LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the class—could hope to obtain. See *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." (internal quotations omitted)). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the

uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

Plaintiff brings this motion pursuant to Federal Rule of Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." The Settlement Agreement here warrants preliminary approval so that persons in the Class can be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## V.    ARGUMENT

### A.        The Settlement Class Should be Preliminarily Certified

Plaintiff here seeks to certify, for settlement purposes, a class defined as: "all natural persons residing in the United States who were sent a Notice Letter notifying them that their Private Information may have been compromised in the Data Incident." SA, ¶ 1.7. The Class is estimated to include approximately 15,000 individuals. *Id*., p. 1. Additionally, Plaintiff also seeks to certify a California Subclass, for settlement purposes, defined as: "All persons residing in the State of California whose PII was involved in the Data Incident." SA, p. 1. Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of those of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over questions affecting only individual members, and

that a class action is superior to other available methods for adjudication of the controversy.

In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise— a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review").

Because a court evaluating certification of a class action that settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, the case management issues inherent in the ascertainable class determination need not be confronted. *See id*. Other certification issues however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions" require heightened scrutiny in the settlement-only class context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*. In this Circuit, courts have found that "[i]n deciding certification, courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class." *Cohen*, 262 F.R.D. at 158, (internal quotations omitted); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.). Because the Class meets all requirements for certification under Rule 23, this Court should grant Plaintiff's request.

### B.      The Proposed Class is Sufficiently Numerous.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical."
Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity
requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA
Mgmt., Inc.,* 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *see also Consol. Rail Corp. v. Town of Hyde
Park*, 47 F.3d 473, 483 (2d Cir.1995). Here, the Parties have identified approximately 15,961
individuals who are a part of the Class. Grombacher Decl., ¶ 35. The large number of persons in the
Class clearly renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### C.      Questions of Law and Fact Are Common to the Class.

Commonality requires Plaintiff to demonstrate "questions of law or fact common to the class."
Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high— commonality does not
require that every question be common to every member of the class, but rather that the questions
linking class members are substantially related to the resolution of the litigation and capable of
generating common answers even where the individuals are not identically situated. *Lizondro-Garcia
v. Kefi LLC*, 300 F.R.D. 169, 175 (S.D. N.Y. 2014) (*citing Wal-Mart Stores, Inc. v. Dukes*, 564 U.S.
338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual
circumstances of class members differ, but "their injuries derive from a unitary course of conduct by
a single system." *Marisol A.,* 126 F.3d at 377 (per curiam). "Even a single common legal or factual
question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014)
(*quoting Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)). Here, the
commonality requirement is met because Plaintiff can demonstrate numerous common issues exist.
For example, whether Squishable failed to adequately safeguard the records of its customers who
entrusted it with their information is a question common across the entire class. Squishable's data

security safeguards were common across the Class, and those applied to the data of one Class Member did not differ from those applied to another.

Other specific common issues include (but are not limited to):

-   Whether Squishable failed to implement reasonable security procedures and practices; and

-   Whether Squishable's conduct rose to the level of negligence.

These common questions, and others alleged by Plaintiff in her Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class- wide basis. Thus, Plaintiff has met the commonality requirement of Rule 23.

**D.      Plaintiff's Claims and Defenses are Typical of the Class.**

Typicality Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments[.]" *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected[.]" *Marisol A.,* 126 F.3d at 376.

Here, Plaintiff's and Class Members' claims stem from the same event—the Data Incident— and Defendant's cybersecurity protocols to protect Plaintiff's and Class Members' data. Thus, Plaintiff's claims are typical of the Class Members' claims and the typicality requirement is satisfied.

**E.      Plaintiff Will Provide Fair and Adequate Representation of the Class.**

A representative plaintiff must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiff must establish that: (1) the there is no conflict of interest between the class representative and other members of the class; and (2) the plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos v.*

*Norwegian Cruise Lines Ltd.,* 212 F.R.D. 144, 156 (S.D.N.Y. 2022) (*quoting Marisol A.,* 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiff's interests are aligned with those of the Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiff's and Class Members' data was allegedly compromised in the same manner. Under the terms of the Settlement Agreement, Plaintiff and Class Members will all be eligible for monetary relief within the $500,000 cap on payments to be made by Defendant. Moreover, their data remaining with Squishable will be safeguarded in the future by the security protections it has or will put into place.

Further, counsel for Plaintiff have decades of combined experience as class action litigators and are well suited to advocate on behalf of the class. See Grombacher Decl. ¶¶ 3-11. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to class members. Thus, the requirements of Rule 23(a) are satisfied.

## F. Because Common Issues Predominate Over Individualized Ones, Class Treatment is Superior.

To show that common issues predominate, Plaintiff must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (*citing In re Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166-167 (2d Cir. 1987)). Commonality is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen*., 262 F.R.D. at 159.

In this case, the key predominating questions are whether Defendant had a duty to exercise

reasonable care in safeguarding, securing, and protecting the personal information of Plaintiff and the Class, and whether Defendant breached that duty. The common questions that arise from Squishable's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.,* Case No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Because the class is being certified for settlement, there are no issues with manageability. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present … management problems[.]").   The resolution of 15,000 claims in one action is superior to individual lawsuits. Class certification—and

class resolution—furthers judicial efficiency and conservation of resources by avoiding individually litigating thousands of individual data breach cases arising out of the same Data Incident.

The common questions of fact and law arising from Defendant's conduct predominate over any individualized issues, a class action is the superior vehicle to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the classes should be certified for settlement.

### G. The Terms of the Settlement are Fair, Reasonable, and Adequate

After determining that certification of the Settlement Class is appropriate, the court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice. Under the current iteration of the Rule, notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of the factors to be considered on final approval: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . .; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief is adequate, Courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. Jan. 28, 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

Before the 2018 revisions to Rule 23(e), the Second Circuit had developed its own list of factors for consideration, finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations,

where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102; *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also* Manual for Complex Litigation, § 30.41 (3d ed. 1995). In making this determination, Second Circuit Courts considered nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.,* 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds)).

In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiff will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by Second Circuit Courts in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval and warrants preliminary approval so that notice can issue to the class.

### 1.  The Settlement Warrants Preliminary Approval Under Rule 23(e).

#### a.  *Plaintiff and Proposed Class Counsel have adequately represented the Class*

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiff has maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaint, remained available for consultation throughout settlement negotiations,

reviewed the Settlement Agreement, and answered counsel's many questions. Grombacher Decl., ¶ 51. Plaintiff does not have any conflicts with the proposed class and have adequately represented Settlement Class Members in the litigation.

Proposed Class Counsel has also adequately represented the class. As discussed *supra* at Section V.E, Co-Lead Counsel has extensive experience in class action litigation generally, and data breach cases in particular. See Grombacher Decl., ¶ 3-11. In negotiating the Settlement, Co-Lead Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not been completed, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating" (internal quotations omitted)). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, at *6 (*citing Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y.1982)) ("In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged").

Here, proposed Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant exchange of information, allowing both Parties to evaluate the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Grombacher Decl. ¶¶ 16, 31. Accordingly, Plaintiff and Class Counsel here have adequately represented the Class,

and this factor weighs in favor of preliminary approval.

    *b. The Settlement was negotiated at arms' length and is absent of any collusion.*

  Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

  Here, both Parties were represented by experienced counsel, and the settlement was only reached after months of arm's length negotiations. The court need look no further than the fact that the parties were unable to reach a mutually agreeable figure for the attorneys' fees to understand that the negotiations were both contentious and at arms' length. Thus, there is no evidence of collusion. Accordingly, this factor weighs in favor of preliminary approval.

    *c. The relief provided for the class is more than adequate.*

  Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The instant Settlement negotiated by Class Counsel on behalf of the class provides for significant relief. Valued at up to a total of $500,000, the Settlement provides for up to $2,800 per Class Member in monetary relief, including reimbursement of ordinary losses, out-of-pocket costs, and compensation for lost time, and if they are a member of the California Subclass, a CCPA payment, as well as payment of a Service Award, attorneys' fees and costs to the extent approved by the Court, and administration costs, up to the agreed $500,000 cap. Additionally, Squishable has undertaken specific data security enhancements ensuring Plaintiff's and Class Member's data is better protected in the future.

  The Settlement terms are consistent with, and in fact better than, agreements in other similar

data breach cases, in the Southern District of New York and across the country. *See e.g., Baksh et al.
v. IvyRehab Network, Inc.* No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out
of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with
payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the
form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-
cv-00013-SPC (E.D. Mo.) (data breach settlement providing up to $280 in value to Class Members
in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the
data breach; credit monitoring services valued at $100; and data security enhancements).

As the relief provided is well within the range of possible approval when considered in light
of the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

i.   The costs, risks, and delay of trial and appeal are great.

The relief provided for by the Settlement Agreement is significant, especially in light of the
costs, risks, and delay of further litigation. The Settlement Agreement guarantees Class Members the
opportunity to make a claim for up to $2,800 each. The value achieved through the Settlement
Agreement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiff
strongly believes in the merits of the case, she also understands that Defendant will assert a number
of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiff to the risk
inherent in trying to achieve and maintain class certification and prove liability—both factors
considered under the test for final approval established by *Grinnell*.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data
breach cases like this one generally face substantial hurdles—even just to make it past the pleading
stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB)(RLE), 2010 WL
2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6)

or Rule 56 stage). Class certification is another hurdle that would have to be met— and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiff disputes the defenses it anticipates Squishable will likely assert—but it is obvious that her success at trial is far from certain. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### ii.    The proposed method of distributing relief, including the method of processing class-member claims, is objective, efficient, and fair.

As described in Section III.B, *supra*, the Settlement Administrator will assess claims and distribute relief. Grombacher Decl. ¶ 47. Class Members will have ninety (90) days from distribution of notice to complete and submit a claim form. *Id*. The Settlement Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. *Id*. The procedure provided for by the Settlement Agreement is objective, efficient, and fair.

### iii.    The attorneys' fees, costs and service awards that Plaintiff will request this Court approve are reasonable.

By separate motion, Plaintiff will seek Court approval of attorneys' fees and costs in the maximum amount of $150,000 (approximately 30% of $500,000 cap) and a service award for Plaintiff in the amount of $1,500. These requests are well within the range of those regularly accepted by Second Circuit courts. *See Strougo ex rel. BrazilianEquity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (finding 33% in attorneys' fees alone to be reasonable)(collecting cases); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481- 83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *In re Polaroid ERISA Litig.*, 2007 WL 2116398, at *3 (S.D.N.Y. July 19, 2007) (granting award of $10,000 to named plaintiffs). While Plaintiff will fully brief her request by

separate motion prior to Class Members' deadline to object to or exclude themselves from the Settlement, the attorneys' fees, costs, and service awards sought clearly fall within the range of possible approval. As mentioned, Squishable continues to reserve the right to object to any fee and cost request that exceeds $80,000. SA, ¶ 7.2.

iv. <u>No additional agreement related to the settlement exist.</u>

No additional agreements require identification or examination under Rule 23(e)(3).

d. *The Settlement Treats Class Members Equitably to Each Other.*

Under the terms of the Settlement, the Class Members will be treated equitably to each other. Every Settlement Class Member has the opportunity to submit a claim for up to $2,800 in monetary compensation. Accordingly, and because the Settlement Agreement meets all of the required criteria under Rule 23 (e), preliminary approval should be granted.

**2. Consideration of the *Grinnell* Factors Favors Preliminary Approval.**

Prior to the revisions to Rule 23, the Second Circuit relied on the nine factors set forth in *City of Detroit v. Grinnell Corp.* to guide its assessment of whether a class action settlement should be approved. *See* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds). While preliminary approval requires only an initial evaluation and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on motion for preliminary approval).

*First*, the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, at Section V(G)(1)(c)(i), continued litigation will be complex, long, and expensive. Plaintiff would likely need to prevail on a motion to dismiss and/or summary judgment and both gain and maintain class certification through trial. Additionally, the amount of data expert

22

analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

*Second*, the reaction of class members is not yet apparent. While Plaintiff has reviewed and approved the Settlement Agreement, other Class Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to the Class and Class Members have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

*Third*, the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the Parties' exchanged information sufficient to allow both Parties to assess the claims and defenses at issue. Early settlement where the Parties are adequately informed, is to be commended. *Castagna*, 2011 WL 2208614, at *6 (commending negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted). As discussed above at Section V(B), the Parties had more than enough information to evaluate the claims and defenses at issue. As such, this factor favors approval.

*Fourth, Fifth, and Sixth*, the risks of establishing liability, damages, and maintaining a class through trial weigh in favor of Settlement Approval. Although Plaintiff firmly believes in the merits of the case, litigating in such an evolving area of law involves significant risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id*. (*quoting In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") (*citing Frank v. Eastman Kodak Co.*, 228 F.R.D. at 185 (W.D.N.Y.

2005)). While Plaintiff remains confident in the strength of her claims, additional litigation leaves open the risk that she will be unable to establish liability, prove causation and damages, and gain and maintain certification through trial. Thus, these factors weigh in favor of Settlement approval.

*Seventh*, the ability of Defendant to withstand a greater judgment is not at issue here. Even if Squishable could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co.*, 228 F.R.D. at 186 (*quoting In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral.

*Eighth and Ninth*, the Settlement provides substantial relief to the Settlement Class, especially in light of all the risks of litigation. The Settlement provides Class Members an opportunity to receive up to $2,800 per person in monetary relief, subject to a $500,000 overall cap on payments to be made by Defendant, along with the benefit of data security measures implemented by Defendant. The value achieved through the Settlement Agreement is guaranteed, where chances of prevailing on the merits are uncertain. Again, while Plaintiff strongly believes in the merits of this case, she also understands that Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open Plaintiff up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. Through the Settlement, the Class Members gain significant benefits without facing further risk of receiving no relief at all.

The *Grinnell* factors favor approving the Settlement—and certainly at least support preliminary approval. As such, the Court should grant Plaintiff's motion and allow notice to issue.

## H.    The Proposed Claims Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For classes like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice

to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via email or U.S. mail to the addresses Squishable has in its possession. Grombacher Decl., ¶ 44.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir.2005). There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. at 114. Second Circuit Courts have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006).

The substance of the Notice here is designed to be clear and concise and inform Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. See SA, Exs. A-C. As such, the proposed Notice Plan should be approved.

## VI.    CONCLUSION

Plaintiff has negotiated a fair, adequate, and reasonable settlement that guarantees Class Members significant relief. The Settlement Agreement is well within the range of reasonable results, and an initial assessment of both Rule 23 and the *Grinnell* factors demonstrates that final approval is likely, and Notice should issue to the class. For these and the above reasons, Plaintiff respectfully requests this Court certify the class for settlement purposes and grant her Motion for Preliminary Approval of Class Action Settlement.

Date: March 1, 2024

Respectfully Submitted,

By,    /s/ Kiley L. Grombacher

Mason Barney
**SIRI & GLIMSTAD, LLP**
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
mbarney@sirillp.com

Marcus J. Bradley
Kiley L. Grombacher
Fernando Valle, Jr.
**BRADLEY/GROMBACHER LLP**
31365 Oak Crest Dr., Suite 240
Westlake Village, CA 91361
Telephone: 805-270-7100
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com
fvalle@bradleygrombacher.com

*Attorneys for Plaintiff and the Putative Class*